McKiNNEV, J.,
delivered the opinion of the Court.
This was a proceeding under the act of 1856, ch. 90, to compel the justices of Scott county, by a writ of mandamus from the Circuit Court of said county, to levy a tax sufficient for the discharge of four several judgments, amounting together, to the sum of $2375 54§ recovered by the relator against the commissioners of said county, as a portion of the amount agreed to be paid for the building of the court house of said county.
The petition of the relator was demurred to; and, on agreement, the demurrer was allowed, and the petition dismissed.
The county of Scott was established by an act of the General Assembly, passed in December, 1849-. Commissioners were appointed by the Legislature, for the purpose of organizing said county, and among other duties enjoined upon them, by the act providing for the establishment of the county, was, “to select and procure by purchase or otherwise, a suitable site for the seat of justice in said countyand likewise, to “ superintend the erection of such public buildings as the County *697 Court of said county shall order and direct to be built, and shall let the same out, and shall take bonds from undertakers, with ample penalties and sufficient securities, payable to themselves and their successors, conditioned for the faithful performance of his or their contracts. Pursuant to the power thus vested in them, the commissioners named in the act, contracted with the firm of Joseph Newman & Sons, (of -which firm the relator is surviving partner,) for the building of the court house at a stipulated sum, payable in instalments. The building was completed, and accepted by the commissioners, as alleged in the petition, in the spring of 1852. In 1855, the several judgments, above mentioned, were recovered, for several instalments due,! .cm account of said building. The petition alleges, that inasmuch as said judgments remained wholly unsatisfied, and no tax had been assessed to meet their discharge, the relator applied to the justices of said county, at the January sessions, 1857, of the County Court, to levy a tax for .the payment thereof, which application was refused by the Court.
The case stands upon the demurrer to the petition. And the question is, whether, upon the allegations of the petition, which must be taken as true, the .Court erred in refusing the application for a 'mandamus.
It is argued for the justice's, that the act of 1856 is unconstitutional and void, and of this opinion was his Honor, the Circuit Judge.
That act provides: “ That in all cases where county commissioners contract debts for. county purposes, and on account of such contract, judgment is obtained against such commissioners, then it shall, be the duty of such *698 County Court to levy a tax, at tbe next regular assessment of taxes, after the judgment or judgments are obtained, to meet the payment of such judgment or judgments ; and the taxes, when so levied and collected, shall be immediately applied to the payment of such judgment or judgments.”
The second section of the act provides, that on failure of the County Court to comply with the requirement of the first section, application may be made by the person owning said judgment, or by any one of the commissioners against whom said judgment may have been rendered, either to a Court of Law or Equity, for a writ of mandamus, to compel the assessment of a tax sufficient to discharge such judgment; or an appeal from the refusal of the County Court to levy a tax, may be prosecuted to the Circuit Court of the county, which Court shall try the same, and shall be authorized. to make an order on the County Court, in the nature of a peremptory mandamus.
This is a • strong statute; but not more so, perhaps, than the nature of the mischief to be remedied seems to demand. ' The question for us, however, is, had the Legislature the constitutional power to enact it?
The amended constitution of 1834, (Art. 2, sec. 29,) incorporates this new provision: “ The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law.”
This provision, it is insisted, merely empowers the Legislature to delegate to the counties the right or authority to levy taxes for county purposes; but does *699 not confer upon tbe Legislature the power to coerce them to do so. In other words, that when the authority to impose a tax for a given' county purpose, has been conferred upon the county, and the manner in which it may be exercised has been prescribed, the power of the Legislature is exhausted; and it is left entirely optional with the agents to- whom the power is delegated, whether they will exercise it or not. That the authority to impose taxes for county purposes authorized to be delegated by the Legislature to the justices of the several counties, or other agents, is a portion of the sovereign power of the State, which, under our constitution, is lodged in the legislative department of the government. That its exercise, in its very nature, is discretionary, and cannot be controlled by the judicial department. And, consequently, the justices of a county, or other agent selected, as the depository of a portion of such power, can no more be coerced to exercise it by the judicial tribunals, than could the Legislature itself; nor can the Legislature empower the Courts to do so.
This is certainly carrying the notion of “county sovereignty ” as it has been called, to a most extravagant length, to say no more of it. Yet it is insisted, that this doctrine is maintained by the case of The Justices vs. Hoodenpyle, 7 Humph., 145, decided by our predecessors in 1846.
If that case is to be understood .as deciding, that the Legislature does not possess the constitutional power to provide for the compulsory assessment of a tax, to discharge a debt properly contracted under the authority *700 of a general law, for a legitimate county purpose, then we feel constrained to dissent from its authority.
The power to contract debts, for the erection of public buildings, and various other county purposes, is indispensable to every county, and has been conferred by several general statutes. And as taxation is the appropriate means of raising funds for the' discharge of such debts, the power to impose taxes for such purposes has been conferred, generally, upon the iustices of the County Court.
The want of authority in the Legislature, to delegate the power of imposing taxes to the County Courts, for various purposes, was felt to be a serious evil under the old constitution; and, looking to the motives which must have influenced the convention in the adoption of the • provision on this subject, above quoted, can it fairly be supposed, that it was merely intended to confer a discretionary power upon the counties, to impose taxes for the discharge of their just liabilities, but not to impose any duty or obligation upon them to do so?
Was it deliberately designed, that these quasi corporations should be invested with the power to create debts for legitimate and indispensable county purposes, and yet be absolved from all legal obligation, and placed beyond the power of coercion, to discharge such debts ? We do not so understand the constitutional provision in question.
The power was given, not merely that it might, but that it should be exercised in the cases contemplated by the constitution. The grant of the power to raise money in this mode, for the discharge of county liabilities, carries along with it, by necessary implication, the obliga *701 tion to do so. 'If it be competent to the Legislature to empower the counties to impose a tax, and dictate the manner in which it shall be done, surely it can provide for the exercise of the power. If not, the authority to delegate such power to the counties,- is unmeaning and illusory, and practically, the creditors of the county are left without remedy. To this conclusion, we would regret exceedingly to be forced. But, we feel no hesitation in declaring the act of 1856, to be a valid and constitutional law; and more than this, a most just and salutary law, highly creditable to its authors, as manifesting . a determined spirit of opposition, in limine, to every thing that savors of repudiation in law, as well as in high places. The doctrine contended for, is in direct opposition to the principles announced iñ -:the case of the Louisville and Nashville Railroad vs. The County Court of Davidson, and other cases in affirmance thereof, not reported. See 1 Sneed, 687.
The judgment of the Circuit Court will be reversed, the demurrer be disallowed, and a peremptory mandamus will issue from this Court, to- compel the justices of Scott county, at their' next quarterly term, to levy and cause to be collected, without delay, a tax sufficient to discharge the several judgments in the petition mentioned, with the interest which shall have accrued on the same.